**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 26 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

RICKEY L. BOONE,

        Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

        Defendant-Appellee.

No. 98-7176
(D.C. No. 98-CV-26-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Rickey L. Boone appeals from the district court's order affirming the decision of the Commissioner of Social Security that he is not entitled to disability insurance benefits. After "closely examin[ing] the record as a whole to determine whether the [Commissioner's] decision is supported by substantial evidence and adheres to applicable legal standards," Evans v. Chater, 55 F.3d 530, 531 (10th Cir. 1995), we affirm.

## BACKGROUND

Mr. Boone asserts that he has been unable to work since December 8, 1991, when the printing company that had employed him as a bindery operator closed. His claims of disability, however, arise from two major accidents, one occurring in 1978 and one in 1993. The 1978 incident, involving an ice auger, resulted in the amputation of his right leg above the knee. He has been fitted with a series of prosthetic devices. In August 1993, Mr. Boone injured his lower back in a fall in a grocery store. The consequent instability of his lower lumbar vertebrae necessitated disc surgery and a 360 degree fusion at L5-S1. The final surgery was performed in September 1994.

Mr. Boone filed this application on June 6, 1995. [2] The records of Mr. Boone's treating physicians confirmed that he had continuing back pain and

---

[2] Two prior applications for benefits, filed in 1991 and 1994, were denied initially and not appealed.

-2-

joint discomfort. Consulting physicians, however, have disagreed on the scope and effect of these problems. The July 1994 report of C.T. Marrow, M.D., apparently ordered to develop the record in an earlier application filed by Mr. Boone, indicated that he had a limited range of motion in the lower back and hip, a slow but stable gait, and no joint deformity, redness, swelling, heat, or tenderness. An orthopedic evaluation performed by Thomas M. Carrell, M.D., on June 6, 1995, showed a full range of motion of the cervical lumbar spine, hips, left knee, and left ankle. Dr. Carrell opined that Mr. Boone could return to sedentary work without restrictions. In contrast, Stuart T. Hinkle, D.O., examined Mr. Boone on January 29, 1996, and concluded that he was permanently and totally disabled, due to neuro-orthopedic, urologic, and gastrointestinal impairments.

At the hearing before the administrative law judge (ALJ), Mr. Boone testified about back and hip pain, phantom pain of the right leg, difficulties with his prosthesis, cramps in the left leg, deterioration of the right hip, numbness in the right thigh and arm, headaches, a decline of bladder and bowel control, memory loss, depression, and sleep difficulties. A vocational expert (VE) testified concerning jobs available in the national economy. In a series of hypothetical questions to the VE, the ALJ described an individual with normal manual dexterity, traumatic amputation of his right leg, phantom pain, hip pain,

back discomfort, postural limitations, incontinence, memory loss, and situational depression. The individual could sit ten minutes, stand five minutes, walk seventy-five yards, and lift a gallon of milk. In response to the questions, the VE identified the jobs of assembler, inspector, and unskilled clerical as full-time sedentary work available for a person with those characteristics.

The ALJ followed the five-step sequential analysis to evaluate Mr. Boone's disability claim. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps). At step three of the analysis, the ALJ determined that Mr. Boone's impairments did not meet the requirements of any listing for musculoskeletal system impairments, see 20 C.F.R., Pt. 404, Subpt. P., App. 1, Listings 1.00-1.13. At steps four and five, he determined that Mr. Boone could not perform his past work but that he retained the residual functional capacity (RFC) to perform sedentary work, which was identified by the VE as existing in significant numbers in the national economy. This determination was based in part on a finding that Mr. Boone's subjective complaints were not fully credible. The ALJ concluded that as of the date of his decision, August 30, 1996, Mr. Boone was not disabled within the meaning of the Social Security Act.

Mr. Boone requested review by the Appeals Council. In connection with the request, he submitted additional exhibits prepared by two treating physicians several months after the ALJ's denial of benefits. The Appeals Council decided

that the submissions did not provide a basis for changing the ALJ's decision because they either duplicated material already in the record or failed to describe Mr. Boone's condition at the time of the decision. Accordingly, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. The district court affirmed and this appeal followed.

## DISCUSSION

On appeal, Mr. Boone argues that: (1) the Appeals Council's refusal to consider the additional submissions amounts to reversible error; (2) the ALJ's finding that the claimed impairments do not meet or equal the criteria of a listed impairment is not supported by substantial evidence; (3) the ALJ's evaluation of his subjective complaints does not comport with relevant legal standards; (4) the ALJ's hypothetical questions were incomplete; and (5) the ALJ's use of Dr. Marrow's report amounts to a de facto reopening of a prior application for disability benefits. We turn first to the issue of whether the Appeals Council properly refused to consider the additional evidence, because our resolution of this question will determine the content of the record on appeal.    See O'Dell v. Shalala , 44 F.3d 855, 859 (10th Cir. 1994).

Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council is required to consider evidence submitted with a request for review "if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the

ALJ's decision." Box v. Shalala , 52 F.3d 168, 171 (8th Cir. 1995) (internal quotation omitted); see also O'Dell , 44 F.3d at 858. Whether the evidence qualifies for consideration is a question of law subject to our de novo review. See Box, 52 F.3d at 171. Evidence is new within the meaning of § 404.970(b) "if it is not duplicative or cumulative," and it is material "if there is a reasonable possibility that [it] would have changed the outcome." Wilkins v. Secretary, Dep't of Health & Human Servs. , 953 F.2d 93, 96 (4th Cir. 1991). To be chronologically pertinent, "the proffered evidence [must] relate to the time period for which the benefits were denied." Hargis v. Sullivan , 945 F.2d 1482, 1493 (10th Cir. 1991).

We cannot say that the Commissioner erred in failing to consider Mr. Boone's additional evidence. The 1993 and 1994 notes of Dr. Richard A. Marks, the orthopedic surgeon who cared for plaintiff's back problems, were already in the record developed by the ALJ. Dr. Marks' note and medical assessment based on his April 8, 1997, examination of Mr. Boone are not pertinent to the time on or before the date of the ALJ's decision. This is true even though Dr. Marks referenced Mr. Boone's prior medical history. Similarly, the medical assessment of Dr. Chandler, dated May 20, 1997, and his letter, dated July 1, 1997, are temporally irrelevant. For these reasons, we do not remand the

case for inclusion of the additional evidence in the administrative record and do not consider the evidence in this appeal. [3]

Mr. Boone's next claim is that, at step three, the ALJ failed to perform a proper analysis to determine if his back impairment met or equaled Listing 1.05(C), concerning disorders of the spine. [4] "[T]o show that [an] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is a claimant's burden to show he meets these criteria. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

Mr. Boone asserts that the ALJ's general conclusion concerning the group of musculoskeletal system listings failed to comply with the legal analysis

---

[3] We make no determination on the effect of these exhibits on any later-filed application for either disability insurance benefits or supplemental security income disability benefits.

[4] The listing provides:

Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

required by Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). We disagree. Although the ALJ's discussion of the medical evidence could have been more particularized, it was adequate to support the conclusion that Mr. Boone failed to prove that his impairments satisfied listing 1.05(C).

Mr. Boone also claims that the ALJ's evaluation of his subjective complaints does not comport with relevant legal standards. Our cases set out a three-pronged inquiry concerning a claimant's allegation of disabling pain. Once a claimant has established the existence of a pain-producing impairment, the ALJ must determine whether a "loose nexus" exists between the proven impairment and the claimant's subjective complaint. Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987). If the ALJ finds that these two criteria are met, as he did in this case, he must then review all of the evidence, including the claimant's subjective account of the severity of his pain, to determine whether the pain is disabling. See id.

The contention here is that the ALJ failed to evaluate the credibility of Mr. Boone's subjective complaints in the context of the entire record. The record does contain documentation of his complaints. But it also provides support for the ALJ's finding that they were not entirely credible.[5] The finding was based on

_____

[5] Mr. Boone's attack on the ALJ's evaluation of the evidence focuses on the July 1994 report of Dr. Marrow, which was written before Dr. Marks performed
(continued...)

-8-

a variety of factors, including Mr. Boone's medical records and account of his daily activities. We may not reweigh the evidence, see Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992), and we see no legal reason to disturb the ALJ's determinations on credibility, see James v. Chater, 96 F.3d 1341, 1342 (10th Cir. 1996).

In a related argument, Mr. Boone claims that ALJ's hypothetical questions to the VE did not include all of his impairments. Because the ALJ determined that Mr. Boone's testimony as to the extent of his limitations was neither completely credible nor supported by objective medical evidence, the ALJ was not required to include all complaints in the hypothetical questions. See Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (hypothetical questions need only reflect impairments and limitations supported by the record).

Finally, we reach the argument that the ALJ effected a "de facto" reopening of Mr. Boone's prior application by considering the report of Dr. Marrow. We fail to see the relevance of this issue. Generally, the concept of a de facto reopening permits judicial review of the Commissioner's disposition of the prior

---

[5](...continued)
the final back surgery. We note, however, the record also contains Dr. Carrell's conclusion, based on a post-surgery examination conducted in June 1995, that Mr. Boone could return to sedentary work without restriction. This conclusion is reconcilable with the notes made by Dr. Marks in September, October, and November 1994.

application.  See Taylor ex rel. Peck v. Heckler, 738 F.2d 1112, 1114-15 (10th Cir. 1984);  King v. Chater, 90 F.3d 323, 325 (8th Cir. 1996).  Mr. Boone, however, does not request our review of the Commissioner's earlier decision.

Moreover, the record contains no indication that the ALJ actually reopened a prior case.  A "review of a claimant's medical history . . . does not constitute reconsideration on the merits necessary to constitute a *de facto* reopening of the earlier application."  Robertson v. Sullivan, 979 F.2d 623, 625 (8th Cir. 1992) (internal quotations omitted).  Here, the ALJ expressly stated that he was not considering the question of whether the prior claim should be reopened.  He did not resort to principles of res judicata, but instead considered all of the evidence in the file to assess Mr. Boone's condition during the time period relevant to the application at issue.  The argument concerning a de facto reopening of a prior application provides no basis for reversing and remanding this case.

AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge

-10-